# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

CASSADEE BUSBY                                    CIVIL ACTION NO.: 3:16-CV-01467

VERSUS                                            JUDGE ELIZABETH FOOTE

TEXAS ROADHOUSE HOLDINGS,                         MAGISTRATE JUDGE PEREZ-MONTES
L.L.C., ET AL.

## MEMORANDUM RULING

This case arises out of a claim for damages based on premises liability brought by Plaintiff Cassadee Busby ("Busby") against Defendants Texas Roadhouse Holdings, L.L.C. and Texas Roadhouse, Inc. (together, "Roadhouse"). Roadhouse filed a third-party complaint against Random Property Investments, L.L.C. ("RPI")[1] and the City of West Monroe ("the City"). [Record Document 16]. Busby then amended her complaint to include RPI and the City as Defendants. [Record Document 32]. Now before the Court is the City's Motion for Summary Judgment [Record Document 61], seeking dismissal of the third-party complaint and the amended complaint. The motion is opposed by both Roadhouse and Busby. [Record Documents 63 & 64]. For the reasons discussed below, the motion for summary judgment is **GRANTED**.

## FACTS & PROCEDURAL HISTORY

On September 15, 2016, Busby filed the instant lawsuit against Roadhouse and XYZ Insurance Company[2] in the Fourth Judicial District Court for the Parish of Ouachita, Louisiana. Record Document 1-2, p. 2. Busby alleges that on October 9, 2015, she was seriously injured when

---

[1] RPI is no longer a party to this lawsuit. The Court previously granted its unopposed motion for summary judgment. *See* Record Document 56.
[2] XYZ Insurance Company has since been dismissed by the Clerk of Court for failure to effect service within 90 days. Record Document 10.

she encountered a piece of rebar protruding from the ground on the premises of Roadhouse. *Id.* at ¶s 3–4. Busby claims that this rebar constituted a defective condition that Roadhouse either created, knew about, or should have known about. *Id.* at ¶ 5. Roadhouse timely removed the case to this Court on October 20, 2016. Record Document 1.

More than a year later, on October 27, 2017, Roadhouse filed a third-party complaint against RPI and the City. Record Document 16. The complaint alleges that the rebar Busby encountered was located on a fifty-foot-wide strip of land that was subject to a servitude granted by Roadhouse to RPI. *Id.* at ¶ 8. This servitude ran across the northern boundary of Roadhouse's property and was established so that RPI could build an extension of a road called Basic Drive (hereinafter, "Basic Drive Expansion"). *Id.* The servitude was established in an agreement between Roadhouse, RPI, and the City. *Id.* at ¶s 8–9. The agreement provided that after the Basic Drive Expansion was completed, Roadhouse would dedicate the area previously covered by the servitude to the City as a public right of way. *Id.* at ¶ 9. In early October of 2015, Roadhouse and the City entered into an agreement in which the City accepted the dedication and granted Roadhouse a predial servitude for ingress, egress, and parking over a portion of the property that was dedicated to the City. Record Document 61-4, pp. 39–40 & 42–43. This portion of the property subject to the predial servitude is referred to as the Roadhouse Protected Area. *Id.* at 40. It is undisputed that Busby encountered the rebar when she was walking across a grassy area in the middle of the Roadhouse parking lot that was located within the Roadhouse Protected Area. *See* Record Document 64-1, ¶ 1, *Roadhouse's Statement of Disputed Material Facts* ("The exact location where Busby's incident occurred was on property . . . subject to a predial servitude in favor of Roadhouse . . . ."). Roadhouse alleges that the rebar was either left by RPI when it was constructing the Basic Drive Expansion or left by the City when it constructed two cast iron utility pipes in the

area of the servitude. Record Document 16, ¶ 14. Roadhouse claims that if it is held liable to Busby, the City is obligated to indemnify it for any damages, expenses, and attorney's fees that may be awarded. *Id.* at ¶s 15–16.

On July 25, 2018, Busby amended her complaint to include RPI and the City as Defendants. Record Document 32. The factual and legal allegations of her complaint remained the same. *Id.*; Record Document 1. On September 17, 2019, the City filed the instant motion for summary judgment requesting the dismissal of Busby's amended complaint and Roadhouse's third-party complaint. Record Document 61.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23. However, "if the movant bears the burden of proof on an issue, . . . he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air*

*Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## LAW & ANALYSIS

### I.     Summary Judgment as to Roadhouse's Claims

Roadhouse alleges that the rebar Busby encountered was left behind by the City after it constructed two cast iron utility pipes in the grassy area and that the City had custody or "garde" over those utility pipes. Record Document 16, ¶s 12 & 14. The Court interprets these statements to mean that Roadhouse contends that the City is the party that should be held liable to Busby for premises liability. Alternatively, Roadhouse asserts that if it is cast in judgment to Busby, the City should be liable to it for "full and complete tort indemnity" for creating the ruin, vice, defect, and/or condition that injured Busby. *Id.* at ¶ 15.

In its motion for summary judgment, the City argues that the undisputed material facts of this case show that neither Busby nor Roadhouse have brought an actionable premises liability claim against it and that it does not owe any indemnity to Roadhouse. Record Document 61-2, p. 5.

## A. Premises Liability

Article 2317 of the Louisiana Civil Code provides that individuals are responsible "not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." La. Civ. Code art. 2317. Article 2317.1 goes on to say that

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

*Id.* at 2317.1. Premises liability claims against public bodies such as the City are also subject to the requirements of Louisiana Revised Statute § 9:2800(C), which requires that "the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so." La. Stat. Ann. § 9:2800(C). To show that the City is liable to Busby for her injuries, Roadhouse and Busby must show that (1) the rebar, or the grassy area that contained the rebar, was in the City's custody; (2) the rebar created an unreasonable risk of harm; (3) the City had actual or constructive notice of the rebar, yet did not take corrective action within a reasonable time period; and (4) the rebar was the cause-in-fact of Busby's harm. *Breitling v. City of Shreveport*, 44, 112 (La. App. 2 Cir. 5/13/09); 12 So. 3d 457, 459.

The City asserts that any premises liability claims against it must fail for two reasons. First, the City claims that neither Busby nor Roadhouse can demonstrate that it had custody, also known as garde, over the rebar or the grassy area. Record Document 61-2, p.10. Second, the City asserts neither Busby nor Roadhouse will be able to show that it had any prior notice of the rebar's presence in the grassy area. *Id.* Both of those elements must be proven in order to succeed on a premises liability claim against a public entity. *Breitling*, 12 So. 3d at 459.

1. Garde over the Rebar and/or the Grassy Area

The City became the owner of the alleged incident site when it accepted Roadhouse's dedication of the property in early October of 2015. *See* Record Document 61-4, pp. 39 & 42. Ownership creates the presumption of garde. *Doughty v. Insured Lloyds Ins. Co.*, 576 So. 2d 461, 464 (La. 1991). However, this presumption may be rebutted. *Id.* "To find otherwise would rewrite article 2317 to impose strict liability for the 'ownership' of a defective thing rather than liability arising out of 'custody' of the thing." *Id.* Because the concept of garde is broader than ownership, more than one party may have custody or garde over a thing under article 2317. *Dupree v. City of New Orleans*, 1999-3651 (La. 8/31/00); 765 So. 2d 1002, 1009.

When determining whether a party has garde over a thing, Louisiana courts consider two guiding principles: "(1) whether the person bears such a relationship as to have the right of direction and control over the thing; and (2) what, if any, kind of benefit the person derives from the thing." *Id.* A party who has the legal duty to prevent a thing's vice or defect from harming another is a party that has garde over that thing. *Id.* One way to rebut the presumption that an owner has garde over its property is by "establishing a contractual undertaking by another to maintain and control the property." *Gallina v. Hero Lands Co.*, 2003-0331 (La. App. 4 Cir. 10/7/03); 859 So. 2d 758, 762. "[C]ourts have recognized that a servitude holder does not have

custody or garde absent either a right of dominion or some contractual responsibility for the surface of the servitude." *Id.* To determine whether the City had garde over the grassy area, the Court begins by examining two agreements between Roadhouse and the City.

### i. *Contracts Between Roadhouse and the City*

In June of 2015, RPI, Roadhouse, and the City entered into an agreement entitled "Agreement for Reciprocal Acts." *See* Record Document 61-4, pp. 12–20. In this document, Roadhouse agreed to dedicate the portion of its property covered by the Basic Drive Expansion to the City as a constructed roadway for public use. *Id.* at 14. This portion of land is referred to as the "Roadhouse Dedicated Property." *Id.* Within the Roadhouse Dedicated Property, the parties designated a smaller piece of land that contained a portion of the Roadhouse parking lot as the "Roadhouse Protected Area." *Id.*

Roadhouse and the City executed a second agreement entitled "Easements, Covenants, and Restrictions Agreement" in early October. *Id.* at 38–50. In this agreement, Roadhouse conveyed the dedicated property to the City, and the City accepted the dedication. *Id.* at 39. This agreement also established a predial servitude for ingress, egress, and parking over the Roadhouse Protected Area in favor of Roadhouse. *Id.* at 39–40. The agreement states that, "[i]n consideration of Roadhouse's agreement to continue to maintain the Roadhouse Protected Area," the City will allow Roadhouse's customers and employees to park within the Roadhouse Protected Area at no cost. *Id.* at 40. The City also agreed not to make changes to the Roadhouse Protected Area without Roadhouse's consent. *Id.* Likewise, Roadhouse agreed to not make changes to the Roadhouse Protected Area without the City's prior consent, with the caveat that "in no event shall the City's consent be required in connection with Roadhouse's maintenance, repair and/or replacement of the Roadhouse Protected Area in accordance with Section 5 below." *Id.* Section 5 requires

Roadhouse to maintain, repair, and replace any and all parking spaces, curbs, driveway access, and landscaping within the Roadhouse Protected Area in good condition and repair at all times. *Id.* Section 5 also states that "in no event shall City be obligated to maintain, repair and/or replace any of the Roadhouse Protected Area." *Id.*

  *ii.* <u>Roadhouse's Arguments as to Garde</u>

The City argues that the "Easements, Covenants, and Restrictions Agreement" conclusively establishes that Roadhouse is the exclusive legal custodian of the grassy area. Record Document 61-2, p. 19. Roadhouse challenges this conclusion on several grounds. Roadhouse claims that Section 4(b) of the agreement establishes that the City retained "sole and exclusive garde" over the Roadhouse Protected Area and argues that two sections of the agreement are either ambiguous or in conflict with one another. Record Document 64, pp. 14–15. Roadhouse argues that the agreement established that the City had sole and exclusive garde over the area where its water utility equipment was located within the grassy area and that Busby's alleged injuries were sustained in that area. *Id.* at 16. Roadhouse asserts that genuine issues of material fact exist as to whether the City had the right of direction and control over the grassy area. *Id.* at 17.

  *iii.* <u>Analysis</u>

The Court's analysis focuses on the language of the "Easements Covenants and Restrictions Agreement." Section 4(b) of the agreement states:

> In no event shall Roadhouse be permitted to modify, alter and/or otherwise change any portion of the Roadhouse Protected Area without City's prior written consent (which consent may be withheld in City's sole discretion); provided, however, in no event shall City's consent be required in connection with Roadhouse's maintenance, repair and/or replacement of the Roadhouse Protected Area (as and if necessary) in accordance with Section 5 below.

Record Document 61-4, p. 40. Section 5 states:

> **Maintenance.** From and after the date of this Agreement, Roadhouse shall be solely responsible for maintaining, repairing and/or replacing (as and if necessary) any and all parking spaces, curbs, driveway access and landscaping within the Roadhouse Protected Area in good condition and repair at all times and in a manner consistent with the remaining property located within the Roadhouse Property. The parties acknowledge and agree that from and after the date of this Agreement, in no event shall City be obligated to maintain, repair and/or replace any portion of the Roadhouse Protected Area.

*Id.*

In light of these provisions, the Court rejects Roadhouse's contention that Section 4(b) of the agreement establishes that the City retained exclusive garde over the Roadhouse Protected Area. Roadhouse bases this argument on the clause in Section 4(b) that states that Roadhouse cannot modify the Roadhouse Protected Area without the City's permission. *Id.* at 14. However, Roadhouse fails to acknowledge that Section 4(a) of the agreement contains a nearly identical clause stating that the City may not modify the Roadhouse Protected Area without Roadhouse's permission. Clearly, Section 4(b) does not establish the City's exclusive garde over the grassy area.

The Court also rejects Roadhouse's argument that Section 4(b) and Section 5 of the agreement are ambiguous or conflicting. *See* Record Document 64, p. 15. Roadhouse claims that in Section 4(b), the City retained exclusive garde over its water utility equipment within the Roadhouse Protected Area and that this paragraph was intended to prevent Roadhouse from making modifications to that equipment. *Id.* at 14–15. Roadhouse contends that Section 4(b) conflicts with Section 5, which states that the City is not obligated to maintain any portion of the Roadhouse Protected Area. *Id.* at 15. The Court fails to see how these sections conflict. First, Section 4(b) makes no mention of the City's water utility equipment. *See* Record Document 61-4, p. 40. Second, Section 4(b) provides that the City's prior consent is not needed for Roadhouse to

make modifications to the Roadhouse Protected Area that are necessary to carry out its maintenance obligations contained in Section 5. *See id.*

The Court is equally unpersuaded by Roadhouse's argument that the City had garde over the Roadhouse Protected Area because it maintained water utility equipment located within the grassy area. Record Document 64, p. 16. The City acknowledges that it and other utility providers enjoy a general utility servitude in and under the grassy area. Record Document 61-2, p. 16. Roadhouse asserts that this utility servitude gives the City the right of direction and control over the grassy area because the City has free access to enter the grassy area in order to construct and maintain its water utility equipment. Record Document 64, p. 16. Again, the Court disagrees. It is uncontested that Busby was injured by a piece of rebar, not the City's water utility equipment.[3] Roadhouse argues that the City had the right of direction and control over the grassy area because it excavated the rebar that allegedly injured Busby without prior permission from Roadhouse after the lawsuit was filed. *Id.* at 16–17. However, the excavation occurred over two and a half years after this incident and was conducted not in the normal course of the City's activities within the grassy area but in connection with this litigation. *Id.* Although the City clearly derives some benefit from the grassy area because of its water utility equipment located there, the Court finds that the City's utility servitude does not establish that the City had the right of direction and control over that area. *Dupree*, 765 So. 2d at 1009.

Roadhouse has not demonstrated that a genuine dispute of material fact exists as to whether the City had garde over the grassy area. The "Easements, Covenants, and Restrictions Agreement"

---

[3] Ronnie Turner, Director of Public Works for the City of West Monroe, submitted a declaration in which he stated that none of the rebar excavated from the grassy area was attached to anything under the ground. Record Document 61-6, p. 5. Roadhouse has submitted no evidence that the rebar was connected to any water utility equipment within the grassy area.

clearly establishes that Roadhouse was to maintain and control the Roadhouse Protected Area, which includes the grassy area where Busby claims to have been injured. The agreement states that the City's consent is not required in connection with Roadhouse's maintenance obligations. Record Document 61-4, p. 40. Furthermore, Section 5 states that Roadhouse is solely responsible for maintaining "any and all parking spaces, curbs, driveway access, and landscaping within the Roadhouse Protected Area in good condition and repair" and that the City shall not be obligated to maintain any portion of the Roadhouse Protected Area.[4] *Id.*

The Court finds that the "Easements, Covenants, and Restrictions Agreement" clearly intends for Roadhouse to have garde over the Roadhouse Protected Area, to the exclusion of the City. In furtherance of that garde, Roadhouse had been maintaining the grassy area by hiring a third-party contractor to mow it on a regular basis before this incident.[5] Record Document 61-5, p. 5. Additionally, the City provided undisputed testimony that it did not perform any work within the grassy area before Busby's alleged injury. Record Document 61-6, p. 3. Based on the evidence in the record, the Court finds that the City has rebutted the presumption that it has garde over the grassy area. The City has shown the that there was "a contractual undertaking by another to maintain and control the property." *Gallina*, 859 So. 2d. at 762. No genuine dispute of material fact exists as to whether the City had a right of direction and control, and therefore garde, over the area where the incident occurred at the time it occurred. *See Dupree*, 765 So. 2d at 1009.

---

[4] In its opposition, Roadhouse asserts that because the alleged injury did not occur in a parking space, curb, or driveway access, the only duty it had as to the grassy area was to maintain the landscaping. Record Document 64, p. 14. Even if the Court agreed with this reading of the agreement, the Court sees no reason why the removal of a piece of rebar from a grassy area within a parking lot would not fall under Roadhouse's duty to maintain the landscaping in that area.

[5] In its Statement of Disputed Material Facts, Roadhouse claims that its third-party contractor never notified it of any rebar protruding from the grassy area. Record Document 64-1, p. 6. While this fact may be relevant to the notice element of a premises liability claim against Roadhouse, it is the City's liability, not Roadhouse's, that is the subject of the instant motion.

2. <u>Notice of the Defect</u>

Even if the Court were to find that the City had garde over the grassy area, Louisiana Revised Statute § 9:2800(C) requires Roadhouse to show that the City possessed actual or constructive notice of the rebar and failed to take corrective action within a reasonable time period. *See Breitling*, 12 So. 3d at 459. Roadhouse contends that the City is not entitled to the benefit of notice in § 9:2800(C) because there is a genuine issue of material fact as to whether the City created the defective condition that caused Busby's alleged injuries. Record Document 64, p. 17. A public entity is presumed to have knowledge of a hazardous condition or defect it created by its own conduct. *Barnett v. City of Baton Rouge*, 2016-0222 (La. App. 1 Cir. 10/31/16); 206 So. 3d 904, 908. In order for Roadhouse's claim against the City to survive summary judgment, Roadhouse must demonstrate a genuine dispute of material fact as to whether the City created the defect or not. Roadhouse argues that a jury could conclude that the City created the defect because (1) whether the City uses rebar in its construction projects is in dispute and (2) Roadhouse's propsed expert, Richard Albert, concluded that the rebar was left behind by the City after it constructed water utility equipment in the grassy area. *Id.* at 18.

i. <u>*The Albert Declaration*</u>

In support of its opposition, Roadhouse has submitted the declaration of Richard Albert ("Albert"), an architect licensed and practicing in Louisiana. Record Document 64-2, p. 1. In this declaration, Albert states that he has been retained by Roadhouse as an expert in the field of commercial architecture to provide expert opinions about the incident. *Id.* The declaration sets forth three facts:

(1) On September 13, 2017, Albert performed an inspection of the grassy area and other areas along Basic Drive where the City owns and operates utilities;

(2) Albert has reviewed photographs taken on February 19, 2018, when the rebar at issue in this case was excavated, showing that the rebar was located within inches of the City's water utility equipment; and

(3) Albert inspected another area along Basic Drive where the City operates similar water utilities and witnessed rebar protruding from the ground in that location.[6]

*Id.* at 2. Based on those facts, Albert's expert opinion is that the rebar was "utilized by [the City] in conjunction with the construction of its above surface and/or subsurface utilities [and] was simply left by [the City] after the construction of its utilities." *Id.* at 2–3. Roadhouse also submits an Architect's Report regarding this incident that Albert compiled after reviewing the site of the alleged injury and various documents from this case. *Id.* at 10–18. This report also states that the rebar was owned by the City. *Id.* at 15.

In its reply, the City objects to Roadhouse's use of Albert's testimony. Record Document 65, pp. 8–10. The City argues that Albert's opinion is not based on any facts in evidence, that Albert does not articulate any rationale or scientific basis or methodology that he used to reach his opinion, and that Albert makes "unsubstantiated and unsupported quantum leaps in logic." *Id.* at 8–9. The City objects to any consideration of Albert's declaration or report by the Court because they do not comply with the Federal Rules of Civil Procedure or the Federal Rules of Evidence. *Id.* at 9–10.

On a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ.

---

[6] The Court also notes that paragraph 5 of Albert's declaration contains inadmissible hearsay under Federal Rules of Evidence 801 and 802. *See* Record Document 64-2, p. 2 ("It is my understanding that [the City] would not permit excavation in the grassy area by any individual or entity other than [the City] due to the fact that [the City] owns and operates utilities located in the grass [sic] area.").

P. 56(c)(2). Additionally, "[a]n affidavit or declaration used to support or oppose a motion must . . . set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). Evidence relied upon at the summary judgment stage need not be presented in an admissible form, but it must be capable of being "presented in a form that would be admissible in evidence." *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)); *see also Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 661 (5th Cir. 1976) ("Evidence inadmissible at trial cannot be used to avoid summary judgment."). "Neither legal conclusions nor statements made without personal knowledge are capable of being so presented." *D'Onofrio v. Vacation Publ'n, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018) (citing Fed. R. Evid. 602, 701, & 702). Because Albert's declaration is submitted as expert testimony, it must meet the requirements of Federal Rule of Evidence 702 in order to be admissible at trial. Rule 702 states that a qualified expert witness may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact of understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Court finds that Albert's declaration and report meet none of the requirements of Rule 702. As to 702(a), Roadhouse fails to demonstrate how Albert's expert architectural knowledge could aid the trier of fact in determining who owned and/or left the rebar in the grassy area. Albert's testimony can be excluded on this basis alone. *See In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986) ("[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument."). Moreover, Albert's opinion is not based on sufficient facts to support this conclusion, nor does his declaration or report reference any

principles or methodologies, reliable or otherwise, that were employed to reach this conclusion. Albert's declaration is entirely conclusory and requires logical leaps that the Court is not willing to make. *See Mid-State Fertilizer Co. v. Exch. Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.").

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court tasked trial judges with exercising a gatekeeping function and excluding unreliable expert testimony. 509 U.S. 579, 592–93 (1993). The ultimate goal of the analytical framework that the Court set forth in *Daubert* is to identify and exclude expert testimony that is based only on unsupported speculation or subjective belief. *Id.* at 590. Albert's opinion that the rebar was left in the grassy area by the City after it constructed utilities is precisely the type of speculation *Daubert* seeks to avoid. Accordingly, Albert's declaration and report cannot be admitted as expert testimony under Rule 702 and therefore cannot be considered by the Court at the summary judgment stage. *LSR Consulting,* 835 F.3d at 534.

### ii.    The City's Use of Rebar

Roadhouse alleges that whether the City uses rebar in its construction projects is a fact in dispute. Record Document 64, p. 18. While that may be true, whether the City used rebar in any of the work performed in the grassy area is not a fact in dispute. The City has provided evidence showing that it did not leave the rebar in the grassy area and that the rebar was unrelated to its water utility equipment. Roadhouse has not presented any contradicting evidence.

In his deposition, Nick Van ("Van"), the manager of the Roadhouse restaurant, stated that he had no recollection of anyone other than the landscaping service performing work within the Roadhouse Protected Area. Record Document 61-5, p. 6. Van also stated that he never contacted

the City regarding any water issues in Roadhouse's restaurant. *Id.* Ronnie Turner ("Turner"), Director of Public Works for the City of West Monroe, submitted an affidavit stating that the City had performed no work in the Roadhouse Protected Area in conjunction with the Basic Drive Expansion other than installing a fire tap on April 20, 2015, which was not within the grassy area where Busby allegedly encountered the rebar. Record Document 61-6, p. 3. Turner states that before the date of Busby's alleged injury, the City was unaware of the presence of rebar in the grassy area. *Id.* According to Turner, the City had not been called to perform maintenance on its water utility infrastructure in the grassy area and had received no complaints about the infrastructure from Roadhouse or from any other party. *Id.* When the rebar was excavated on February 19, 2018, it was not connected to any water utility equipment below the ground. *Id.* at 5. Subsequently, on December 6, 2018, Turner instructed his staff to lift a prefabricated concrete collar from around an iron valve pipe in the grassy area to reveal that no rebar was contained within it. *Id.* at 5.

In his deposition, Daniel Coston ("Coston"), an employee of the City's Public Works department, stated that the department only uses rebar for patchwork concrete. Record Document 61-7, p. 3. He also stated that the water department does not use rebar and that he did not recall ever performing a job for the water department where rebar was used. *Id.* at 4 & 5. Mr. Coston was the supervisor over the fire prevention work that the City performed in the grassy area in April of 2015. *Id.* at 6. Coston stated that he did not see any rebar in the area on that date. *Id.* at 9. He stated that the concrete casings that go around valve pipes such as the one in the grassy area do not contain rebar but are prefabricated and bought from a manufacturer. *Id.* at 10. Turner also stated that any concrete used in the grassy area was prefabricated. Record Document 61-6, p. 4. Another City employee, Derrick Johnson, stated in his deposition that his crew, which did water and sewer

projects for the City, never poured concrete and only installed prefabricated concrete. Record Document 61-8, pp. 4 & 5.

All of these facts, taken together, show that (1) rebar is only used for pouring concrete; (2) the City did not pour any concrete in the grassy area; and (3) the City's water department never used rebar. The facts that Roadhouse relies on in opposition do not refute these points. Roadhouse puts great emphasis on the fact that, during Turner's deposition, he stated that the City did not purchase, use, or store any rebar. *See* Record Document 64-4, p. 7. He also stated that he did not recall ever using rebar in the course of his 30-year employment with the City. *Id.* Turner later stated that his initial response was incomplete and that the water/sewer departments do not use or store rebar but that the streets department will occasionally use rebar. *Id.* at 9. In its statement of contested facts, Roadhouse frames Turner's correction to his deposition as a credibility issue. Record Document 64-1, p. 3. Roadhouse points to Coston's statement that the City does store rebar to show that Turner's testimony was inconsistent and therefore not credible. *Id.* at 4. The City neglects to mention that Coston's response to questioning on this matter confirmed Turner's explanation for his previous error. Coston stated that Turner was over the water department and the water department "definitely doesn't use rebar." Record Document 61-7, p. 3–4. The Court finds no reason to question Turner's credibility based on this single error.

The Court agrees with Roadhouse that Turner's and Coston's depositions create a genuine factual dispute as to whether the City ever stored rebar. However, to survive summary judgment, the non-movant must identify a genuine issue of *material* fact. Fed. R. Civ. P. 56(a). The Court finds that whether or not the City ever stored rebar is not material to whether the City ever brought rebar to the grassy area or used rebar in the work it performed in installing or maintaining its water utility equipment in the grassy area. On these points, the City's evidence stands unchallenged.

Therefore, because no evidence indicates that the City created the defective condition by leaving the rebar in the grassy area, Roadhouse must show that the City had constructive notice of the defective condition in order to be held liable under § 9:2800(C) for premises liability. Roadhouse has provided no evidence as to the City's notice of the presence of the rebar.

       3.   <u>Conclusion as to the City's Premises Liability</u>

The failure of a plaintiff to establish any of the elements of a claim under § 9:2800(C) is fatal to that claim. *Skulich v. Fuller*, (La. App. 2 Cir. 12/14/11); 82 So. 3d 467, 471. The Court finds that Roadhouse has failed to prove two elements of a premises liability claim against a public body: (1) that the City had garde over the area where Busby allegedly encountered the rebar or the rebar itself and (2) that the City had constructive notice of the rebar and failed to act within a reasonable time. La. Stat. Ann. § 9:2800(C); *see Breitling*, 12 So. 3d at 459. Accordingly, Roadhouse has failed to prove that a party injured within the grassy area could assert a premises liability claim against the City.

**B.**    **The City's Tort Indemnity to Roadhouse**

Roadhouse's complaint alleges that the City should be held liable to Roadhouse if Roadhouse is held liable to Busby because the City "created the ruin, vice, defect, and/or condition that injured Plaintiff." Record Document 16, ¶ 15. Specifically, Roadhouse alleges that the City should be held liable to it for tort indemnity because the rebar was left by the City when it constructed water utility equipment in the grassy area. *Id.* at ¶ 14. As discussed above, Roadhouse has not established a genuine issue of material fact on this point. Roadhouse has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. Therefore, the City's Motion for Summary Judgment is hereby **GRANTED** as to Roadhouse's third-party complaint.

## II.    Summary Judgment as to Busby

Busby's claims against the City sound in premises liability. *See* Record Document 1-2, ¶ 5; 30. To succeed on this claim, she must show that the City had garde over the grassy area and that it had constructive notice of the rebar and failed to act within a reasonable time. La. Stat. Ann. § 9:2800(C); *see Breitling*, 12 So. 3d at 459. In her opposition to the instant motion, Busby first argues that the City and Roadhouse held joint garde over the grassy area because of the construction work the City performed in relation to Basic Drive. Record Document 63-1, p. 3. Busby references a deposition which the Court has not found in the record: that of Mark Williams ("Williams"), a contractor that Busby claims was hired by the City. *Id.* at 3–4. Busby alleges that Williams stated in his deposition that the City had to remove a piece of curb from the area in question and that the area was full of utilities. *Id.*

Even if a contractor hired by the City had made such an observation in a deposition, the Court fails to see how these facts establish that the City and Roadhouse exercised joint garde over the grassy area. However, the Court suspects that Busby has confused the City with RPI on this point. According to its motion for summary judgment, RPI hired a contractor named Mark Williams to remove and install a new curb in the area where the accident occurred. Record Document 40-1, p. 6. The Court has not located any evidence in the record indicating that the City also employed a contractor named Mark Williams to remove a curb in that area. Putting aside Roadhouse's contractual assumption of garde over the grassy area, Busby has failed to submit any proof that the City had garde over that area and, as a result, her claim for premises liability against the City fails. La. Stat. Ann. § 9:2800(C); See *Breitling*, 12 So. 3d at 459.

Even if Busby were able to show that the City had garde over the grassy area, her premises liability claim would still fail because she has not shown that the City had notice of the defective

condition and failed to correct it within a reasonable time. Busby alleges that Williams, again referred to as the City's contractor, testified that he could not recall looking for rebar that may have been unearthed during the construction. Record Document 63-1, p. 4. Busby argues that "[t]his failure to ensure the property in question was free from rebar should result in a finding that [the City] had constructive notice of the defective condition." *Id.* Busby asks the Court to make an unsupported negative inference: that failing to search for rebar proves that the City had notice of the existence of the rebar. The Court declines to do so. Furthermore, the same arguments showing that the City did not have notice of the rebar that were discussed above as to Roadhouse's claims apply equally to Busby's claims.

When the moving party has satisfied its burden of proof on summary judgment by showing that there is no genuine dispute of material fact, it is up to the nonmovant to go beyond the pleadings and designate specific facts for support. *Little*, 37 F.3d at 1075. In this case, the City has shown that there are no genuine disputes of material fact as to whether it had garde over the grassy area and whether it had notice of the presence of the rebar in that area. In response, Busby has failed to go beyond the pleadings and designate any facts in support of her claims. Therefore, Busby has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Therefore, the City's motion for summary judgment [Record Document 61] is hereby **GRANTED** as to Busby's claim.[7]

---

[7] Because the Court finds that the City's motion should be granted on the merits, the Court need not address the City's argument that Busby's claim against it has prescribed. *See* Record Document 61-2, p.

## CONCLUSION

For the reasons discussed above, the City's Motion for Summary Judgment [Record Document 61] is hereby **GRANTED** and all claims against it are **DISMISSED with prejudice**. The City of West Monroe is no longer a party to this case. Accordingly,

The City's *Daubert* Motion in this case [Record Document 77] is hereby **DENIED as moot**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this __20th_ day of December, 2019.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE